Oscar GARCIA, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–00–00955–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 5, 2002.

Christian C. Samuelson, Houston, for Appellant.

William J. Delmore, III, Chief Prosecutor, Appellate Division, Houston, for Appellee.

Panel consists of Justices MIRABAL, NUCHIA, and PRICE.*

## OPINION

MARGARET GARNER MIRABAL, Justice.

Appellant, Oscar Garcia, was charged by information with the misdemeanor offense of driving while intoxicated. After his mo-

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at    Houston, participating by assignment.

tion to suppress was denied, appellant pled nolo contendere and was sentenced, in accordance with an agreed recommendation from the State, to 180 days in jail, probated for one year, and a $250 fine. In three issues, appellant complains the trial court erroneously denied his motion to suppress. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of January 15, 2000, appellant drove his car into a parked car. Following the accident, Houston police officer A.J. Keirn was dispatched to the scene. When Officer Keirn arrived at the scene, appellant had already been placed in an ambulance. Officer Keirn spoke to a witness, who told him that he saw appellant drift into the bike lane on the street's right shoulder and then strike a parked car at a high rate of speed.

Officer Keirn then spoke to appellant inside the ambulance. He noticed an odor of alcohol on appellant's breath and asked appellant if he had been drinking. Appellant admitted he had been drinking, but he did not know how much he had to drink.

Appellant was then taken to Ben Taub Hospital where a blood sample was drawn for purposes of medical treatment. Later, pursuant to a grand jury subpoena issued by the Intake Division of the Harris County District Attorney's Office, a public service officer of the Accident Division obtained appellant's medical records. The records indicated that appellant's blood-alcohol level was .18. At the time the subpoena was issued, there were no criminal proceedings pending against appellant. The public service officer delivered the medical records to the district attorney's office, which then charged appellant with driving while intoxicated.

The medical records were never presented to a grand jury for evaluation, and no grand jury voted on whether to issue an indictment or information against appellant. It is not contested that no charges were initiated against appellant until after his medical records were obtained by the subpoena.

Appellant filed a motion to suppress evidence of the blood-alcohol level, which was overruled. At the hearing on the motion to suppress, after overruling the motion, the trial court asked if appellant wanted to appeal the ruling. Appellant's counsel responded that he wanted to confer with appellant and a recess was taken. Following the recess, the following exchange took place between the parties and the trial court:

THE COURT: We're back on the record in Cause Number 0984755.

After hearing arguments of counsel, I have denied the defense's Motion to Suppress the blood sample in this case. That is the basis of the intoxication paragraph, I assume? Is that correct?

[DEFENSE COUNSEL]: That is correct.

THE COURT: All right. Mr. Samuelson, I now understand your intent is to enter into an agreed plea and then appeal my ruling. Is that correct?

[DEFENSE COUNSEL]: That's correct.

THE COURT: Agreeable to the State?

[PROSECUTOR]: Agreeable, Your Honor.

THE COURT: Mr. Garcia, how do you plead to the offense of driving while intoxicated?

MR. GARCIA: No contest.

. . . .

THE COURT: Pleading no contest, I find sufficient evidence to find you guilty. Sentence you to 180 days in jail,

probated one year; $250 fine, plus costs of court; random urinalysis; drug treatment; victim impact; no alcohol or drugs, no beer, no wine; $50 donation to Crime Stoppers; full restitution, but I understand there's been—but provide proof. Provide proof to probation. $40 a month supervisory fee, 50 hours community service.

All right. The appeal bond will remain at $500. See the clerk, please. All set.

(Adjourned)

The docket sheet contains the following notation: "Mot. to sup. denied. Permission to appeal. Appeal bond to remain at $500."

## DISCUSSION

### A. WAIVER

■ At the time of his plea, appellant signed a pre-printed document that provided, in part, as follows:

> I understand that ... if the court does not exceed the agreed recommendation in assessing punishment that my right to appeal my conviction will be limited to matters raised by written motion and ruled upon before trial unless the Court gives permission to raise other matters....

> In addition to the above, I understand that if the judge does not follow the plea bargain, I will be allowed to withdraw my plea. **I further understand that even though the judge may follow any plea bargain agreement, I still have a right to appeal. Understanding that I have a right of appeal, however, and as part of my plea bargain agreement, I knowingly and voluntarily waive that right of appeal in exchange for the prosecutor's recommendation, provided that the punishment assessed by**

**the court does not exceed our agreement.**

(Emphasis added.) The document included a signed statement of appellant's counsel that read, in part, as follows: "I have consulted with the defendant whom I have found to be competent and to whom I have fully explained all of the matters contained in this instrument." The document was also signed by the prosecutor and the trial judge.

Based on the above-language, the State argues appellant waived his right to appeal. Appellant responds that the record is clear that he never intentionally waived his right to appeal; the trial judge, simultaneously with the signing of the plea documents, specifically granted appellant permission to appeal after appellant told the judge he wished to appeal and the prosecutor told the judge the State was agreeable.

A defendant in a noncapital case may voluntarily and intentionally waive any rights secured him by law, including the right to appeal. TEX.CODE CRIM. PROC. ANN. art. 1.14(a) (Vernon Supp.2002); *Blanco v. State*, 18 S.W.3d 218, 219–20 (Tex.Crim. App.2000); *Lacy v. State*, 56 S.W.3d 287, 288 (Tex.App.-Houston [1st Dist.] 2001, no pet.).

In *Buck v. State*, 45 S.W.3d 275, 278 (Tex.App.-Houston [1st Dist.] 2001, no pet.), this Court held that, in a plea-bargained case in which the trial court followed the plea bargain agreement, a pre-sentencing waiver of the right to appeal conditioned on the trial court's acceptance of the plea bargain agreement was valid and enforceable. *See also Blanco*, 18 S.W.3d at 219–20; *Lacy v. State*, 56 S.W.3d at 288.

However, this case is distinguishable. Although appellant signed a pre-printed form stating he waived his right to appeal,

he also expressly stated at the motion to suppress hearing, conducted moments earlier, that he wished to appeal the trial court's ruling. The record shows not only that the trial court was aware of appellant's desire to appeal, but also that, when asked if it was agreeable to appellant filing an appeal, the State acknowledged that it was agreeable. As part of sentencing, the trial judge set an appeal bond and the docket sheet states permission to appeal was granted.

This case is controlled by the Court of Criminal Appeals's recent opinion in *Alzarka v. State*, 90 S.W.3d 321 (Tex.Crim. App. 2002) (designated for publication), a case factually similar to the case at bar. In *Alzarka*, after the trial court denied the defendant's motion to suppress, the defendant pled guilty pursuant to a plea agreement with the State. *Id.* 90 S.W.3d at 322. The plea form signed by the defendant contained a waiver of the right to appeal. *Id.* However, as in this case, the record clearly indicated that the defendant expressly stated, at both the motion to suppress hearing and the plea proceeding, which followed the motion to suppress hearing, that she intended to appeal the trial court's motion to suppress ruling, the trial court specifically granted the appellant the right to appeal, and the State explicitly acknowledged appellant's right to appeal. *Id.* 90 S.W.3d at 322–24. On appeal, the State argued that Alzarka had failed to preserve her right to appeal. The Fourteenth Court of Appeals agreed, holding that Alzarka waived her right to appeal by signing the pre-printed plea papers. *Alzarka v. State*, 60 S.W.3d 203, 206 (Tex. App.-Houston [14th Dist.] 2001), *rev'd, Alzarka v. State*, 90 S.W.3d 321 (Tex.Crim. App. 2002) (designated for publication).

Reversing the court of appeals, the Court of Criminal Appeals held as follows:

> [I]t is clear that appellant's attorney, the district attorney, and the trial court intended for appellant to have the right to appeal, that such was a term of the plea agreement, and that the inclusion of, or failure to cross out, the language about waiving appeal in the plea forms was an oversight.
>
> . . . .
>
> We conclude that the record, in which the trial judge, the district attorney, and appellant's attorney repeatedly made statements agreeing that appellant would be permitted to appeal, directly contradicts and rebuts any presumption raised by the terms of the boiler-plate plea form signed by appellant and reflects that appellant did not waive appeal.

*Alzarka*, 90 S.W.3d at 323–24.

Similarly, from the record presented in this case, we cannot conclude that appellant waived his right to appeal. We will therefore reach the merits of the appeal.

## B. Suppression of Evidence of Blood Alcohol Test Results

In points of error one, two, and three, appellant asserts the trial court erred in denying his motion to suppress his blood-alcohol content test results because the State violated his right to privacy under the Fourth Amendment of the United States Constitution, article I, section 9 of the Texas Constitution, and the Code of Criminal Procedure article 38.23 by abusing the grand jury subpoena process. In particular, appellant argues that the process was abused because: (1) no formal recognized criminal proceedings

had been brought against appellant at the time appellant's medical records were seized; (2) before the grand jury subpoena was issued, the grand jury was not convened; (3) the subpoena was not issued by the grand jury's attorney for the State; (4) the grand jury subpoena did not direct a person to appear before the grand jury; (5) the grand jury never voted on whether the evidence supported cause to issue an indictment against appellant; and (6) there was no probable cause to issue the grand jury subpoena.

In *State v. Hardy*, the Court of Criminal Appeals stated that the societal interests in safeguarding the privacy of medical records "are not sufficiently strong to require protection of blood-alcohol test results from tests taken by hospital personnel solely for medical purposes after a traffic accident." 963 S.W.2d 516, 527 (Tex.Crim. App.1997); *see also Knapp v. State*, 942 S.W.2d 176, 179 (Tex.App.-Beaumont 1997, pet. ref'd) (holding appellant's privacy rights were not violated when medical records containing blood alcohol levels, obtained by grand jury subpoena, were admitted at trial).

Relying on the holding in *Hardy*, we addressed issues similar to those raised in this case in *Dickerson v. State* 965 S.W.2d 30 (Tex.App.-Houston [1st Dist.] 1998, pet. dism'd, improvidently granted). The facts of *Dickerson* are as follows. After a car accident, the defendant was taken to a hospital where blood tests were performed. *Id.* at 31. As part of the investigation, a subpoena was issued for the blood test results, which indicated a .105 blood-alcohol content. *Id.* The State later filed charges against the defendant. *Id.*

The defendant filed a pre-trial motion to suppress the blood test results, which the trial court overruled. *Id.* On appeal, the defendant argued the grand jury subpoena was defective because it did not direct any person to appear before the grand jury, was not issued by a neutral and detached magistrate, and did not authorize the executing officer to seize evidence. *Id.* In overruling the defendant's points of error, we presented the following analysis:

> The Court of Criminal Appeals recently addressed the precise issues raised in appellant's ... points of error in *State v. Hardy*, 963 S.W.2d 516 (Tex.Crim.App. 1997). Under facts indistinguishable from our facts, the court held there was no Fourth Amendment reasonable expectation of privacy and no statutory physician-patient privilege of confidentiality that protects the record of blood test results of an injured motorist from being given to law enforcement officers pursuant to a grand jury subpoena. *Id.* at 523, 527.... In the absence of any constitutional or statutory reasonable expectation of privacy, appellant has no standing to complain of defects in the grand jury subpoena process. *See State v. Comeaux*, 818 S.W.2d 46, 51 (Tex. Crim.App.1991). Therefore, we also overrule appellant's ... points of error raising such defects.

*Id.*

Following *Hardy* and *Dickerson*, we conclude that appellant does not have a reasonable expectation of privacy in the blood-alcohol test results obtained for medical purposes following the accident.[1] Thus, he does not have standing to complain of any defects in the grand jury

---

1. We also conclude that the holding in *Hardy* can be extended to apply to the alleged violation of article I, section 9 of the Texas Constitution. *See Hulit v. State*, 982 S.W.2d 431, 436 (Tex.Crim.App.1998) (stating article 1, section 9 of Texas Constitution does not offer greater protection to individual than Fourth Amendment to United States Constitution, and it may offer less protection).

subpoena process. Appellant's first, second, and third points of error are overruled.

## CONCLUSION

We affirm the trial court's judgment.